FILED - GR
July 11, 2008 10:37 AM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _ald____/_____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Billy Talton**,

   Plaintiff,

 v.

**CrossCheck, Inc.**,
a California corporation,

   Defendant.

Hon.

1:08-cv-656
Gordon J Quist
US District Judge

## Complaint

### I. Introduction

1. This is an action for damages and declaratory relief, brought by a consumer against a debt collector in response to the debt collector's practices which violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

### III. Parties

3. Plaintiff Billy Talton is a natural person residing in Kalamazoo County, Michigan.

1

Mr. Talton is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Talton is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA.

4. Defendant CrossCheck, Inc. ("CrossCheck") is a California corporation doing business at 6119 State Farm Drive, Rohnert Park, California 94928. CrossCheck also maintains an office in Dallas, Texas. According to its website (www.cross-check.com), "CrossCheck Inc. is the third largest check approval and guarantee company in the nation." According to the State of California, the registered agent for CrossCheck is Timothy Labadie, 6119 State Farm Drive, Rohnert Park, California 94928. CrossCheck is a "debt collector" as the term is defined and used in the FDCPA. CrossCheck is a "collection agency" and a "licensee" as the terms are defined and used in the MCPA.

**IV. Facts**

5. In April 2008, Mr. Talton went to Seelye Wright Imports ("Seelye") in Kalamazoo, Michigan to shop for a motor vehicle. Mr. Talton told the Seelye saleswoman that he needed a vehicle large enough to carry his entire family, which included five children. The Seelye saleswoman showed Mr. Talton multiple vehicles, including a 2005 Mitsubishi Outlander station wagon ("Outlander"). Mr. Talton expressed concern that the Outlander was not large enough. The Seelye salesperson encourage Mr. Talton to take the Outlander home and use it with his family for a few days to determine whether it was large enough. The Seelye saleswoman assured Mr. Talton that if it turned out that the Outlander was too small, Mr. Talton could return it to Seelye.

6. On or about April 28, 2008, Seelye prepared and had Mr. Talton sign numerous documents in connection with his purchase of the Outlander, including a Retail Installment Sales

Contract. Mr. Talton gave Seelye a down payment of $1,000.00, which was comprised of $300.00 in cash and a postdated check in the amount of $700.00.

7. On the first day that Mr. Talton had the Outlander at home, he determined that the vehicle was too small for his family. On the second day, Mr. Talton took the Outlander back to Seelye, explained that he was returning the vehicle because it was too small, and left the vehicle and keys with a salesman.

8. On or about the same day that Mr. Talton returned the Outlander to Seelye, he contacted his bank and stopped payment on the post-dated $700.00 check that he had given to Seelye toward his down payment on the vehicle.

9. On or about May 1, 2008, the State of Michigan issued a new Certificate of Title for the Outlander, naming Mr. Talton as the owner and naming JP Morgan Chase Bank, NA ("Chase") as the first secured party.

10. A day or so after Mr. Talton returned the Outlander to Seelye, a Seelye manager contacted Mr. Talton and asked him to bring the new Certificate of Title for the Outlander to Seelye so that Mr. Talton could sign title back over to Seelye.

11. As requested, Mr. Talton took the new Certificate of Title for the Outlander to Seelye and signed the title back over to Seelye. Mr. Talton asked for the return of his $300.00 cash down payment, but Seelye refused.

12. Chase later released its lien on the Outlander.

13. Apparently, and despite the foregoing, Seelye later attempted to negotiate the post-dated $700.00 check received from Mr. Talton as down payment toward the Outlander.

14. Mr. Talton's bank refused payment on the check because of Mr. Talton's stop

payment order.

15. Apparently, Seelye then turned the check over to defendant Cross-Check for collection.

16. Mr. Talton owes nothing to Seelye, CrossCheck, or anyone else in connection with the Outlander transaction. If anything, Seelye owes money to Mr. Talton for wrongfully refusing to return Mr. Talton's cash down payment.

17. By letter dated June 19, 2008, CrossCheck wrote Mr. Talton and demanded payment in the amount of $700.00. The letter threatened legal action if Mr. Talton did not pay. A copy of the letter is attached hereto as Exhibit A.

18. In June 2008, CrossCheck made repeated telephone calls to Mr. Talton in efforts to collect the disputed debt. Mr. Talton repeatedly explained to CrossCheck employees that he had returned the Outlander to Seelye, owed nothing, and had paperwork to prove it.

19. Despite the foregoing, CrossCheck continued to call Mr. Talton as often as four or five times a day in efforts to collect the disputed debt.

20. Despite the foregoing, CrossCheck employees in efforts to collect the disputed debt made multiple statements to Mr. Talton and his family which were deceptive, abusive and unfair.

21. Eventually, Mr. Talton and his family were forced to screen their calls by use of caller id in order to avoid CrossCheck's calls.

22. In one June 2008 call, Mr. Talton's fourteen-year-old son answered the phone and heard the CrossCheck employee say, "Oh, now he's having his children answer the phone for him. Get the fuck off the line."

23. In another call which took place in or about the week of June 23, 2008, a male CrossCheck employee demanded payment of the disputed $700.00 check. Mr. Talton again explained that he had returned the vehicle to Seelye, that the deal had been cancelled, that he owed nothing, and that he had paperwork to prove it. Mr. Talton stated that he would be comfortable having a judge decide the dispute. Hearing that, the CrossCheck employee falsely threatened litigation. The CrossCheck employee falsely stated that Mr. Talton remained liable for the full down payment. The Crosscheck employee continuously shouted at and abused Mr. Talton, screaming that Mr. Talton had "ripped the merchant off" and calling Mr. Talton a "liar." The CrossCheck abruptly terminated the call by shouting "You're done Billy! You're done!"

24. The unlawful debt collection methods, acts and practices of CrossCheck and its employees were willful.

25. CrossCheck and its employees willfully violated the FDCPA and MCPA.

26. As an actual and proximate result of the acts and omissions of NCO and its employees, plaintiff has suffered damage for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

27. Plaintiff incorporates the foregoing paragraphs by reference.

28. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

d) A declaration that defendant's practices violate the FDCPA; and

e) Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

29. Plaintiff incorporates the foregoing paragraphs by reference.

30. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

        abusive method to collect a debt;

d)     Defendant violated M.C.L. § 339.915(o) by using profane or obscene language, and

e)     Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to M.C.L. § 339.916(2);

b)     Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)     Statutory damages pursuant to M.C.L. § 339.916(2); and

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: July 10, 2008

                                            Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com